FRANK N. DARRAS #128904, Frank@DarrasLaw.com
LISSA A. MARTINEZ #206994, LMartinez@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com

DarrasLaw
3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone:  (909) 390-3770
Facsimile:   (909) 974-2121

Attorneys for Plaintiff
SAMUEL BROWN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| SAMUEL BROWN, | Case No: |
|---|---|
| Plaintiff, | COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |
| vs. | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | |
| Defendant. | |

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that the Plains All American GP, LLC Group Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by Plains All American GP, LLC ("PLAINS ALL AMERICAN") to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, SAMUEL BROWN ("Plaintiff" and/or "Mr. BROWN"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the state of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of PLAINS ALL AMERICAN, its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number LK-963361 that had been issued by Defendant LINA to PLAINS ALL AMERICAN to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. The subject Policy promised to pay Plaintiff monthly long term disability benefits for a specified period of time should he become disabled. Therefore, LINA both funds and decides whether claimants will receive benefits under the Plan and as such

suffers from a structural conflict which requires additional skepticism.

9. Based upon information and belief, Plaintiff alleges that, according to the terms of the Plan, if Plaintiff became disabled, LINA promised to pay long term disability benefits to Plaintiff as follows:

- Elimination Period: 180 Days
- Monthly Benefits: The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.
- Minimum Disability Benefit: $100 per month
- Definition of Disability/Disabled:
  - The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
    - unable to perform the material duties of his or her Regular Occupation; and
    - Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
  - After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
    - Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience, and
    - Unable to earn 80% or more of his or her Indexed Earnings.

10. Prior to his disability under the terms of the Plan, on or about November 7, 2012, Plaintiff, who had been employed with PLAINS ALL AMERICAN, was working as a Tanker Driver.

11. However, Plaintiff became disabled under the terms of the Plan and timely submitted a claim to LINA for payment of disability benefits.

12. LINA subsequently paid Plaintiff benefits through January 29, 2015.

13. However, on or about February 13, 2015, LINA unreasonably and unlawfully denied Plaintiff's claim. And, on or about July 16, 2015 and October 20, 2016, LINA unreasonably and unlawfully upheld its denial of Plaintiff's claim.

14. According to LINA's denial letters:

- **February 13, 2015**: "After completing our review of your claim, we are unable to continue paying benefits beyond 1/29/2015…You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal."
- **October 20, 2016**: "After completing our review of your client's claim, we must uphold our previous decision to deny the claim. No additional benefits are payable at this time…At this point in time your client has exhausted all administrative levels of appeal and no further appeals will be considered…Please note that your client has the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a)…"

15. In so doing, LINA unreasonably and unlawfully failed to timely identify the medical personnel who reviewed Plaintiff's file; relied upon the opinions of physicians who were financially biased and/or not qualified to refute the findings of Plaintiff's board certified physicians; relied strictly upon physical requirements of occupations instead of taking into consideration the non-exertional requirements of Plaintiff's own, or any, occupation; and misrepresented the terms of the Policy.

16. Additionally, LINA knew, or should have known, that the documentation submitted to and/or obtained by LINA clearly substantiated Plaintiff's disability, including, but not limited to, the following:

- <u>12/19/2012 EMG</u>:
    - Mild demyelinating peripheral neuropathy.
    - Mild right carpal tunnel syndrome

- o Mild right ulnar neuropathy across the patient's elbow
- <u>12/20/2012 MRI Cervical Spine</u>:
  - o Impression:
    - Anterior fusion at C5-6 without recurrent disc.
    - Multilevel disc bulges and probably a disc protrusion at T1-2. There is congenital narrowing of the canal with superimposed areas of more focal canal stenosis. The most prominent is at C6-7 where there is mild cord compression.
    - Multilevel foraminal stenosis, some of which is severe as noted.
- <u>01/29/2013 MRI Cervical Spine X-Rays</u>:
  - o Impression:
    - Anterior cervical discectomy and fusion C5-6 level demonstrating osseous incorporation of the graft without evidence for hardware failure or spinal instability.
    - Pulmonary military nodules.
- <u>01/29/2013 MRI Lumbar Spine X-Rays</u>:
  - o Impression:
    - Advanced multilevel degeneration of the lumbosacral spine.
- <u>02/15/2013 EMG/NCV</u>:
  - o Interpretation:
    - Left ulnar neuropathy at the elbow. This is moderate. It has caused hand weakness and sensory loss. At this time, I would recommend decompression surgery. We do not want his hand to get progressively weak.
    - Left CTS.
- <u>03/31/2014 OVN</u>:
  - o Neck:

|   |   |
|---|---|
| 1 | ▪ ROM flexion: 45 |
| 2 | ▪ ROM extension: 30 |
| 3 | ▪ Rotation – Right: 40 |
| 4 | ▪ Rotation – Left: 40 |
| 5 | o Lumbar Exam: |
| 6 | ▪ Lower – On palpation, trigger points: LT paraspinous |
| 7 | muscles, RT paraspinous muscles. |
| 8 | ▪ ROM from waist degrees on flexion: 45 |
| 9 | ▪ ROM degrees on extension: 20 |
| 10 | ▪ Tilt – Right: 20 |
| 11 | ▪ Title – Left: 20 |
| 12 | • <u>04/23/2014 Left C2, C3, C4, and C5 Facet Medial Branch Blocks and |
| 13 | Third Occipital Nerve Block</u> |
| 14 | • <u>05/13/2014 Left C2, C3, C4, and C5 Facet Medial Branch Blocks, |
| 15 | Radiofrequency Thermocoagulation</u> |
| 16 | • <u>09/10/2014 Right C7 Transforaminal Epidural Injection</u> |
| 17 | • <u>10/09/2014 Right C7 Transforaminal Epidural Injection</u> |
| 18 | • <u>10/21/2014 TOVA Test</u>: |
| 19 | o Interpretation: |
| 20 | ▪ The results of this T.O.V.A. test are borderline, and may |
| 21 | suggest an attention problem, including ADHD. |
| 22 | • <u>11/19/2014 Right C7 Transforaminal Epidural Injection</u> |
| 23 | • <u>12/12/2014 MRI Lumbar Spine:</u> |
| 24 | o Impression: |
| 25 | ▪ Disc bulge and facet disease contributes to spinal and lateral |
| 26 | recess stenosis at L4-5. |
| 27 | ▪ Hyper intense zone posterior annulus L4-5. Annular fissure. |
| 28 |   |

- <u>05/06/2015 Left C2, C3, C4, and C5 Facet Medial Branch Blocks and Third Occipital Nerve Block</u>
- <u>05/24/2016 Questionnaire Completed by Plaintiff's Treating Physician:</u>
  - The medical records indicate that Mr. Brown's continues to suffer from pain due to his lumbar and cervical conditions. Does Mr. Brown still struggle with chronic pain due to his chronic lumbar and cervical conditions?
    - Yes
  - The medical records also indicate that Mr. Brown's sitting ability has been negatively affected by his chronic lumbar and cervical conditions. Do you agree that Mr. Brown's lumbar and cervical conditions continue to render him unable to sit for prolonged periods of time?
    - Yes
  - Is Mr. Brown's ability to stand and/or walk on a frequent basis impaired due to his lumbar and cervical conditions?
    - Yes
  - In a previous questionnaire dated August 29, 2013, Dr. Janice Gore, DO opined that Mr. Brown could only reach and finely manipulate on an occasional basis. Do you agree that Mr. Brown's reaching and fine manipulation should be restricted to an occasional basis due to his lumbar and cervical conditions?
    - Yes
  - Mr. Brown's occupation as a Truck Driver requires lifting up to 20-50 pounds occasionally, stoop frequently, utilize foot controls and be exposed to various weather conditions on a 40 hour per week basis. Mr. Brown has asserted that he is unable to perform these duties of his occupation due to his chronic lumbar and cervical

COMPLAINT

        conditions. Do you agree with Mr. Brown that he is unable to perform the material duties of his regular occupation?
- Yes
- 08/31/2016 Operative Note:
  - Operation Performed: Lumbar laminectomy at L4-5 with medial facetectomies and foraminotomies.

17. To date, even though Plaintiff was disabled under the terms of the Plan, LINA has not paid Plaintiff any disability benefits under the Policy since on or about January 29, 2015. The unlawful nature of LINA's denial decision is evidenced by, but not limited to, the following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed his file; failing to timely advise Plaintiff of what specific documentation it needed from him to perfect his claim; and, failing to provide a complete copy of all documents, records, and other information relevant to his claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);
- LINA ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,
- LINA ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physician's opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, LINA's highly conflicted physician's opinion does not serve as substantial evidence, as it is not supported by evidence in the claim file, was not issued by a physician with the same level of medical expertise as the board certified treating physicians, nor

is it consistent with the overall evidence in the claim file.

18. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

19. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

20. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about January 30, 2015 to the present date.

21. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

22. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan definition of disability and consequently he is entitled to all benefits from the Plan to which he might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits from the

termination of benefits to the present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.  An award of benefits in the amount not paid to Plaintiff beginning on or about January 30, 2015, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plan to which he might be entitled while receiving disability benefits, with reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plan;

2.  An order determining Plaintiff is entitled to future disability payments/benefits so long as he remains disabled as defined in the Plan;

3.  For reasonable attorney fees incurred in this action; and,

4.  For such other and further relief as the Court deems just and proper.

Dated: November 4, 2016

DarrasLaw

_____
PHILLIP S. BATHER
Attorneys for Plaintiff